A. Franklin Mahoney, J.
Within the context of an action for a declaratory judgment the plaintiff moves for summary judgment. The defendants cross-move both to dismiss the complaint (CPLR 3211) and for summary judgment on undisputed facts (CPLR 3212). The facts are as follows:
On August 5, 1969 the Village of Wurtsboro in Sullivan County enacted an ordinance known as the “ Village of Wurtsboro Trailer and Trailer Park Ordinance”. Plaintiff made application for a trailer permit on May 22, 1970. The application was denied. On July 28, 1970 the Village Board of Wurtsboro passed a “ Revised Trailer and Trailer Park Ordinance ”, part II of which makes it ‘ ‘ unlawful for a corporation, business or individual to set up or erect on private property for public use within the incorporated limits of the Village of Wurtsboro, a campsite which is to be used as temporary residences for the transient public ’ ’. Plaintiff, owner of a large 30-acre tract of land in the village, applied anew, and the denial of that application was received after the commencement of the action for declaratory judgment but before the return date of this motion.
Plaintiff seeks judgment summarily determining that part II of the revised ordinance is unconstitutional. His attack is predicated on two grounds: (1) that part II of the ordinance is prohibitory in effect in violation of the dicta in Matter of Mid-State Adv. Corp. v. Bond (274 N. Y. 82), and (2) section 89 (subd. 69) of the Village Law grants only regulatory authority to village boards in the State of New York with respect to house trailer camps, tourist camps and house trailers.
First, I know of no case in this State, nor has any been drawn to my attention, that specifically deals with tenting on private property by people other than the owners or their guests. Subdivision 69 of section 89 of the Village Law relates solely *643 to “House trailer camps, tourist camps and house trailers ”. Clearly, ‘ ‘ house trailer camps ’ ’ and ‘ ‘ house trailers ’ ’ are moveahle, semi-moveable or permanent structures or mobile homes on wheels or foundations and the right of municipalities to regulate them is too well recognized a principle to require discussion here. Does the nomenclature or verbal classification 1 ‘ tourist camps ’ ’, however, embrace tenting on private property by the transient public so as to bring the proposed construction of a temporary tent campsite by plaintiff within those activities over which the local municipality has only regulatory powers pursuant to section 89 (subd. 69) of the Village Law! And, if it does, does over-all regulatory power include the power to prohibit if such prohibition promotes aesthetic values and the public welfare % If the first question were answered in the negative, the problem at hand would be greatly simplified and the conclusion that the village, under its police powers, could proscribe the subject activity on aesthetic and public welfare grounds, could be easily reached. Such an answer, however, would avoid the critical issue implicit in plaintiff’s first ground, i.e., that the authority to regulate precludes, absolutely, the power to prohibit. Therefore, I shall discuss this issue as if tenting were an included subject of section 89 (subd. 69) of the Village Law.
In 1937 the Court of Appeals, reversing the Appellate Division, held (Matter of Mid-State Adv. Corp. v. Bond, 274 N. Y. 82, supra) an ordinance of the City of Troy prohibiting the erection of billboards any place within the city to be unconstitutional. Since this decision reinstated the opinion of Special Term which struck down the law because it prohibited rather than regulated the erection of billboards, the maxim that regulatory authority does not include prohibitory power entered into the dicta of law concerning the exercise of police powers by municipalities taking their powers as grants from a larger governmental sovereign. This maxim or rule, always more proverbial than real, gradually eroded over the years as populations expanded and individual citizens came into greater conflict with the government nearest them and gave vent to their displeasures with ingenious demonstrations of protest. In People v. Stover (12 N Y 2d 462) the City of Eye, New York adopted an ordinance prohibiting the erection of clotheslines or other similar devices on a front or side yard abutting a street. Admittedly, the law was enacted in response to the conduct of a citizen who erected a single clothesline in each of five consecutive years in his front yard, from which he hung tattered clothing, rags and other unsightly objects, as a “peaceful protest” *644 against high municipal taxes. In upholding the validity of the law Judge (now Chief Judge) Fuld held, seemingly for the first time, that aesthetics is a valid subject for legislative concern and legislation designed to promote that end is a permissible exercise of the police power. From this it follows that aesthetics, public welfare, health and safety are legitimate goals and legislation promoting them is valid provided such laws are not “unreasonable devices of implementing community policy” (People v. Stover, supra; Dukeminier, Zoning for Aesthetic Objectives, 20 Law & Contemp. Prob., pp. 218, 220, 221, 233). In other words, ordinances advancing, protecting or enhancing local aesthetic values or public health, safety and morals will not be voided unless the manner of achieving these ends is arbitrary or irrational. It is interesting to note that Judge Fuld cited Matter of Mid-State Adv. Corp. v. Bond (supra) as an instance of a case where the legislative body may go too far in the name of aesthetics. Yet, four years later in Matter of Cromwell v. Ferrier (19 N Y 2d 263) Chief Judge Fuld concurred in the opinion of Judge Breitel who concluded (p. 268) that ‘ ‘ the decisional as well as the practical bases for the holding in Bond (supra) are either no longer valid or have changed so considerably that the case should be overruled”. In Matter of Cromwell v. Ferrier (supra) the majority of the Court of Appeals .reaffirmed the holding in Stover (supra) that aesthetic considerations can and may justify prohibition but it underscored the caveat that the exercise of the police power should not extend to every act of nonconformity but, rather, should be exercised only with respect to those aesthetic considerations which ‘1 bear substantially on the economic, social, and cultural patterns of a community or district.” (p. 272).
From all of this it can be concluded that the exercise of the police power by a village is not, generally, or by the language of section 89 (subd. 69) of the Village Law, limited to mere regulation. Within the general authority to regulate may exist the power to prohibit in the furtherance of aesthetic values or the public well-being, provided, however, that the exercise of that power is not arbitrary, capricious or irrational.
In this case we are concerned with a village with a permanent population, according to the 1970 Federal Census, of 686 inhabitants. Plaintiff’s papers include an exhibit showing 104 tent sites and an area marked for future campsites that would contain half again the number proposed. Obviously, if not prohibited, plaintiff could construct and conceivably populate his campsite with approximately 300 people, all living under canvas, *645 Even if all his proposed sanitary facilities, roadways and access routes were constructed, it can hardly be denied that such a tented community, presumably of different colors and shapes and all within the .village limits, would offend the aesthetic sensibilities of even a “ Walden backwoodsman”. Further, since the proposed campsite would house only transients with little or no loyalty to or interest in the community, the village would have to greatly enlarge its police and fire protection to say nothing of its disposal facilities.
Clearly, the ordinance under attack, albeit prohibitory in nature, is not an irrational or arbitrary exercise of police power. Bather, it is a reasonable exercise of the municipal police power essential to the safety, health, peace and good order of the community.
Next, the restriction imposed on the use of plaintiff’s property does not constitute a taking of his property in violation of the due process clause of the Federal and State Constitutions. No rule in constitutional law is better settled than the principle that all property is held subject to the right of the sovereign to reasonably regulate its use under the police power in the interest of general safety and welfare. The restriction imposed on plaintiff’s property is not a taking. The plaintiff is restrained in the use of his acreage not because the public is taking it for its use but because the proposed use is noxious and contrary to the public good. Such a restriction on private property is constitutionally permissible. (See dissent in Matter of Mid-State Adv. Corp. v. Bond, supra.)
The plaintiff’s motion for summary judgment is denied. The defendants’ cross motion to dismiss the complaint (CPLR 3211) and for summary judgment (CPLR 3212) is granted. A complaint in an action for declaratory judgment may be dismissed upon granting defendant’s motion for summary judgment where the matter is determined solely as a matter of law and there are no factual issues to be resolved.